NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0198n.06

Case No. 23-1881

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
May 03, 2024
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| JEFFREY HAROLD STEFANSKI, | ) | |
| Petitioner - Appellant, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| ADAM DOUGLAS, Warden, | ) ) | |
| Respondent - Appellee. | ) ) | OPINION |
| | ) | |

Before: GIBBONS, MCKEAGUE, and STRANCH, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Jeffrey Harold Stefanski was convicted in a Michigan state court of three counts of criminal sexual conduct. He appealed his conviction in state court, raising claims of ineffective assistance of counsel based on (1) his counsel's failure to introduce evidence that would have supported Stefanski's theory that the victim made up the sexual assaults to curry favor in a separate court proceeding, and (2) his counsel's failure to successfully object to the admission of hearsay testimony by the victim's mother. After the Michigan courts affirmed on direct review, Stefanski filed a habeas petition in federal court. The district court denied Stefanski habeas relief after determining that, even if Stefanski's counsel was deficient, Stefanski could not establish that he was prejudiced by his counsel's alleged errors. For the following reasons, we affirm.

I.

Stefanski's convictions stem from his sexual assault of Phil Lounds.[1] Stefanski—forty-six years old at the time of trial—owned a home and cabin in Northern Michigan, where he allegedly hosted sexually-charged parties in which he allowed teenage boys to drink alcohol. *People v. Stefanski*, No. 334510, 2018 WL 5276411, at *1 (Mich. Ct. App. Oct. 23, 2018). Lounds—then eighteen years old—attended some of these parties with friends. Lounds alleged that Stefanski twice inserted his penis into Lounds's mouth when Lounds was too intoxicated to stop him. *Id.* On another occasion, Stefanski attempted to initiate anal sex with Lounds while Lounds was "nearly unconscious." *Id.* This time, Lounds was able to roll over and prevent penetration. *Id.*

Lounds first reported these sexual assaults to a lawyer, Jennifer France, who represented him in a pending probation violation proceeding. *Id.* at *2. Stefanski was then charged with two counts of criminal sexual conduct in the first degree and one count of criminal sexual conduct in the second degree. Stefanski's first trial resulted in a mistrial, but he was convicted in the second. At trial, Lounds testified that he reported Stefanski's misconduct while awaiting sentencing for his parole violation after seeing on the news that Stefanski was charged with a different crime involving sexual misconduct. While Lounds asserted that he did not expect to get anything out of reporting Stefanski's crimes, Stefanski's theory of defense was that Lounds falsified the sexual assaults to get a more lenient sentence at his probation violation sentencing. To this end, Stefanski's trial counsel underscored the timing and inconsistencies of Lounds's first reports of the sexual assaults—noting that Lounds first told his lawyer as he faced a pending violation proceeding, that Lounds spent significant time at Stefanski's home after the assaults allegedly

---

[1] We recite the facts largely as portrayed by the Michigan Court of Appeals. This recitation is presumed to be correct. *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009) (citing 28 U.S.C. § 2254(e)(1)). Stefanski does not dispute the Michigan court's discussion of the facts on appeal.

occurred, and introducing testimony conflicting with Lounds's accounts of Stefanski's sexually-charged parties. Stefanski also took the stand and refuted Lounds's and others' accounts that he regularly served teenagers excessive alcohol and engaged in sexual behavior at gatherings he hosted; he further adamantly denied Lounds's allegations of sexual assault.

The jury convicted Stefanski on all three counts. Ultimately, the court sentenced Stefanski to 11 to 40 years' imprisonment on counts 1 and 2 to run concurrently, and 2 to 15 years on count 3—also concurrent. On direct appeal and collateral review, Stefanski has maintained that his counsel performed deficiently in two instances during trial, which amounted to ineffective assistance of counsel and resulted in convictions in violation of Stefanski's constitutional rights.

First, Stefanski challenges his counsel's failure to introduce Lounds's probation records to conclusively demonstrate that Lounds faced a pending probation violation proceeding when he first disclosed Stefanski's sexual assault to France. This, Stefanski argues, was key to establishing Lounds's motive to fabricate the assaults. Although Lounds readily admitted in his testimony that he faced sentencing for a probation violation when he first reported the sexual assault, France equivocated. France agreed that Lounds was on probation when he disclosed the assaults and that she later used his reporting in a sentencing memorandum, but she denied that Lounds faced charges of new crimes when he first reported. Further, she testified that "nothing was pending" at the time of his initial report. DE 5-15, Trial Tr. Vol. II, Page ID 944. Lounds's probation records, which were not introduced at trial, confirm that Lounds was facing a pending parole violation when he first disclosed Stefanski's assaults to France. *Stefanski*, 2018 WL 5276411, at *2 n.2. Lounds had also garnered a second parole violation a few days *after* his disclosure. France testified that Lounds's upcoming parole hearing, and her later use of his disclosure in a sentencing memorandum, referred to this later violation that occurred after his disclosure, and not any prior

violation. This underscored her (incorrect) testimony that Lounds was not facing a pending violation proceeding when he first reported Stefanski's crimes. Because Stefanski's theory of defense—that Lounds had a motive to falsify the allegations—depended on Lounds facing jail time at the time of his initial disclosure, Stefanski argues that his counsel's failure to impeach France with Lounds's probation records to reaffirm that he was in fact facing a probation violation greatly undermined his defense. He points to the government's use of France's testimony in closing arguments to say that Lounds "was not in trouble" when he first reported the assault as indicative of the harm done. DE 5-16, Trial Tr. Vol. III, Page ID 1118, 1151.

Second, Stefanski charges his counsel as ineffective for failing to successfully object to hearsay testimony from Lounds's mother. Lounds's mother briefly testified to the contents of a phone conversation she had with Lounds while he was in jail, presumably for the probation violation. She recalled Lounds crying and telling her that Stefanski had done something sexual to him. Stefanski's counsel lodged a hearsay objection, but the court ultimately overruled the objection and agreed with the prosecution that the testimony could come in as a prior consistent statement under the Michigan Rules of Evidence. Stefanski argues that his counsel erred in failing to inform the judge that the testimony was not in fact a prior consistent statement because Lounds made the statement *after* he had developed the motive to fabricate the assault.

After the trial court denied Stefanski's motion for a new trial on these grounds, Stefanski unsuccessfully raised both issues on direct appeal in state court. *Stefanski*, 2018 WL 5276411, at *2–5. The Michigan Court of Appeals rejected Stefanski's first assignment of error after finding Stefanski's counsel not deficient in his failure to introduce Lounds's probation records. Specifically, the court noted that Lounds "himself readily admitted that he was facing a probation violation when he disclosed the sexual assault. Therefore, the probation documents would have

demonstrated that the victim testified truthfully, bolstering his credibility." *Id.* at *2. Further, the court highlighted that France's testimony about the pending proceeding was ambiguous, thus reducing the need to impeach her, as she also testified that she did attempt to obtain a reduced sentence for Lounds based on his cooperation in the sexual assault case against Stefanski. *Id.* Even if counsel did unreasonably err, the court found that Stefanski failed to establish prejudice, as Lounds's credibility was supported by more than his own testimony; other witnesses corroborated aspects of Lounds's account, such as the sexual nature of the parties and Stefanski's inappropriate behavior toward Lounds and others. *Id.* at *3. Likewise, the court rejected Stefanski's second allegation of error: the missed hearsay objection. The court did agree with Stefanski that the testimony was inadmissible hearsay. *Id.* at *5. But even assuming counsel performed deficiently by failing to raise the correct hearsay objection, the court concluded that Stefanski again failed to show prejudice. The court found Lounds's mother's testimony vague and unlikely to carry much weight in light of the other testimony from witnesses detailing more specific aspects of Stefanski's parties where the assaults took place. *Id.* Furthermore, since the statement was made after Lounds was imprisoned for the probation violation, it "actually bolstered" Stefanski's motive-to-falsify theory. *Id.*

Stefanski then reasserted these claims in state and federal court. First, he applied for leave to appeal to the Michigan Supreme Court, which was denied. *People v. Stefanski*, 924 N.W.2d 552 (Mich. 2019) (mem). Then, Stefanski filed a habeas petition in district court. After finding the Michigan Court of Appeals's decision properly within 28 U.S.C. § 2254(d)'s realm, the district court rejected Stefanski's petition but granted a certificate of appealability. Stefanski appealed.

II.

When reviewing the denial of habeas corpus relief, we review the district court's legal conclusions de novo and its findings of fact for clear error. *Rayner v. Mills*, 685 F.3d 631, 636 (6th Cir. 2012). Our review of the state court's determinations, however, is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d). *Fleming v. Metrish*, 556 F.3d 520, 524 (6th Cir. 2009) (citing *Ivory v. Jackson*, 509 F.3d 284, 291 (6th Cir. 2007)). AEDPA provides that:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Lang v. Bobby*, 889 F.3d 803, 810 (6th Cir. 2018) (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)). Alternatively, a state court's decision denying habeas relief is an "unreasonable application" of clearly established federal law if the court identifies the correct governing legal principle but applies it in an "objectively unreasonable" way to the facts at hand. *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 409, 413 (2000)). The state court's

determination of a claim is insulated if "fairminded jurists could disagree" on the correctness of its decision. *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In applying these standards, we look to the last reasoned state court decision. *Lang*, 889 F.3d at 813. Here, that is the decision of the Michigan Court of Appeals.

III.

A claimant establishes ineffective assistance of counsel in violation of his Sixth Amendment right by showing that his counsel's conduct fell below "an objective standard of reasonableness" and that a "reasonable probability" exists that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). In determining whether counsel's conduct was objectively unreasonable, courts "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Richter*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 689). And a "reasonable probability" of a different outcome "is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694).

Because Stefanski seeks habeas corpus relief, AEDPA adds another layer to *Strickland*'s two-part test. *Id.* at 105. As the Supreme Court recognized, "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* (internal citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* Stefanski argues that the Michigan Court of Appeals assessed Stefanski's ineffective assistance claims in a manner that was both (1) contrary to clearly established law, and (2) an unreasonable application of federal law. We discuss both arguments in turn.

1.

The Michigan Court of Appeals and the district court found that counsel's failure to introduce Lounds's probation records did not support a claim for ineffective assistance of counsel. We affirm. First, Stefanski cannot surpass AEDPA's restriction of our consideration of the state court's assessment of his attorney's performance. And even if his attorney was deficient, the state court's assessment of prejudice is also entitled to AEDPA deference.

A. Performance

Stefanski first argues that the Michigan Court of Appeals unreasonably applied *Strickland*'s performance prong in finding his counsel's failure to introduce Lounds's probation records not deficient, thus making AEDPA's prohibition on relief inappropriate. According to Stefanski, "no reasonable, fairminded jurist could subscribe" to the Michigan court's analysis. CA6 R. 5, Petitioner Br., at 34–35 (citing *Richter*, 562 U.S. at 101). Counsel's mistake was unreasonable, in Stefanski's eyes, because using Lounds's probation records to contextualize France's testimony would have helped Stefanski's motive-to-falsify theory more than it would have bolstered Lounds's credibility. In light of this cost-benefit analysis, and lacking any reason not to introduce the records, no fairminded jurist could find defense counsel's failure to do so within the realm of reasonable representation.

True, Stefanski's lawyers conceded that they possessed documentation showing that Lounds had a pending probation violation proceeding when he reported the assaults to France. And the government later capitalized on the timing ambiguity in closing arguments, invoking France's testimony to say that Lounds was not in any trouble and thus lacked a reason to fabricate the assaults when he first reported them. The better course may well have been introducing Lounds's records to settle any remaining confusion on the matter. But the state court addressed

these arguments and found Stefanski's counsel's conduct within the wide realm of reasonable representation. *See Stefanski*, 2018 WL 5276411, at *2. In doing so, the state court identified "reasonable argument[s] that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105. Even if the state court's reasoning was "incorrect or erroneous," *Wiggins*, 539 U.S. at 520, a petitioner alleging an unreasonable application of clearly established federal law "must show far more than that the state court's decision was 'merely wrong' or 'even clear error.'" *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (per curiam) (quoting *Virginia v. LeBlanc*, 582 U.S. 91, 94 (2017) (per curiam)). Stefanski has not done so, and AEDPA accordingly prohibits relief.

The state court found that defense counsel's failure to impeach France with the records should be viewed in light of the other evidence introduced, namely, Lounds's admission that he faced a probation violation when he first disclosed the assault. *Stefanski*, 2018 WL 5276411, at *2. *Strickland* supports this. *See Strickland*, 466 U.S. at 690 (considering the reasonableness of counsel's conduct "in light of all the circumstances"). Stefanski himself painted this case as a credibility contest between Lounds and himself. The state court found that impeaching France further could have incidentally bolstered Lounds's credibility by confirming that portion of his testimony. *Stefanski*, 2018 WL 5276411, at *2. The court also highlighted the inconsistencies inherent in France's testimony, as she admitted to using Lounds's sexual assault report in a sentencing memorandum—making impeachment of her testimony less essential. *Id.*

The state court's weighing of the risk of crediting Lounds's testimony may have been incorrect, but its determination that Stefanski's counsel fell within *Strickland*'s broad realm of reasonableness is not "objectively unreasonable." *Williams*, 529 U.S. at 409. As the district court recognized, France's testimony was unclear at times as to whether she was referring to Lounds not

having an outstanding criminal charge (which was true) or not having a probation violation (which was not true). It only became clear at closing argument that the government used France's testimony to establish that there was no pending probation violation at all. Although the preferable way to clear up the confusion would have been to introduce Lounds's probation records during France's testimony, Stefanski's attorney instead raised France's prior testimony detailing Lounds's pending probation violation, although that proved unsuccessful.

The circumstances of this case thus differ from those presented in *Peoples v. Lafler*, 734 F.3d 503 (6th Cir. 2013), in which this court found that an ineffective assistance claim based on counsel's failure to present impeachment evidence warranted habeas relief. *Id.* at 512. In *Lafler*, defense counsel failed to impeach known false testimony from the only two witnesses who tied the defendant to the crime. *See id.* at 512–13. The court found that the defense counsel thus failed to elicit key testimony, which was the only way for the defendant to prove his theory of the case. *Id.* at 513. Here, in contrast, the information Stefanski desired was already in the record through Lounds, who testified the day before France and repeatedly affirmed that he faced an upcoming sentencing for a probation violation when he first disclosed the sexual assaults to France. And Stefanski's counsel did attempt to draw out France's use of Lounds's reporting to obtain a more lenient sentence in a proceeding, comporting with Stefanski's general theory that Lounds fabricated the story to benefit himself in legal proceedings. Although the probation record could have easily been introduced, weighing in favor of deficient performance, *see Lafler*, 734 F.3d at 514, the misstep does not rise to the magnitude warranting habeas relief. At bottom, although Stefanski's counsel's conduct was certainly not the best course of action, we are not faced "with a record that cannot, under any reasonable interpretation of the controlling legal standard, support"

the state court's finding that Stefanski's counsel was not deficient. *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007); *see also Knowles v. Mirzayance*, 556 U.S. 111, 126–27 (2009).

### B.  Prejudice

If Stefanski's counsel was deficient, such deficiency gives rise to a constitutional violation only upon a showing of a reasonable probability that, but for counsel's deficiency, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694.  Stefanski attacks the state court's conclusion that he failed to show prejudice both as contrary to clearly established federal law and as an unreasonable application of federal law.  Taking each in turn, we disagree.

*Contrary to Clearly Established Federal Law.*  Where a state court applies a legal rule contrary to governing Supreme Court law, a federal court on review is "unconstrained by § 2254(d)(1)" and can review the petitioner's claim de novo.  *Fulcher v. Motley*, 444 F.3d 791, 799 (6th Cir. 2006) (quoting *Williams*, 529 U.S. at 406).  A paradigmatic example would be a state court stating that an ineffective assistance of counsel claim requires the petitioner to prove by a preponderance of the evidence—rather than *Strickland*'s reasonable probability standard—that the result of his proceeding would have been different absent counsel's errors.  *Williams*, 529 U.S. at 405–06.  That said, we must avoid a "readiness to attribute error" to state court decisions and instead view them "with the presumption that state courts know and follow the law."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam).

In line with this presumption, an occasional imprecise or incorrect articulation of federal law does not run afoul of AEDPA if the state court otherwise properly discussed the governing law.  *See id.* at 23–24 (imprecise recitation of prejudice prong does not automatically render state court decision contrary to clearly established law); *Holland v. Jackson*, 542 U.S. 649, 654–55 (2004) (per curiam) (finding articulation of *Strickland* not contrary to clearly established law even

though state court could be read to implement a preponderance of the evidence standard for prejudice prong but such reading would "needlessly create internal inconsistency in the opinion," and the state court otherwise correctly articulated *Strickland*'s test); *Johnson v. Genovese*, 924 F.3d 929, 937–38 (6th Cir. 2019) (not contrary to federal law where state court articulated *Strickland* standard correctly multiple times and only articulated an incorrect standard once); *see also Daniel v. Curtin*, 499 F. App'x 400, 411 n.5 (6th Cir. 2012) (not contrary to federal law where court correctly articulated *Strickland* standard but then twice referenced outcome-determinativeness and the parties did not raise the issue). *But see Vasquez v. Bradshaw*, 345 F. App'x 104, 111–12 (6th Cir. 2009) (contrary to clearly established law when the state court repeatedly articulated and applied a but-for test instead of *Strickland*'s reasonable probability test); *Spaulding v. Larson*, 704 F. App'x 475, 480 (6th Cir. 2017) (contrary to clearly established law where "the Michigan Court of Appeals never stated the *Strickland* standard correctly, and thrice stated it incorrectly"); *Magana v. Hofbauer*, 263 F.3d 542, 550 (6th Cir. 2001) (contrary to clearly established law where the state court clearly articulated and applied a stricter prejudice standard).

Stefanski argues that AEDPA deference is unwarranted here because the state court improperly jettisoned *Strickland* and required Stefanski to show that his counsel's error was "outcome determinative." *Stefanski*, 2018 WL 5276411, at *3.[2] Stefanski is correct that the state court's reference to outcome determinativeness could be read as holding Stefanski to a higher burden than *Strickland* requires. But in line with the Supreme Court's command that we view

---

[2] In its discussion of whether the failure to introduce Lounds's probation records prejudiced Stefanski, the Michigan Court of Appeals first cited *Strickland*'s reasonable probability standard. *Stefanski*, 2018 WL 5276411, at *3 (citing analogous standard under Michigan law). After discussing the other evidence that supported Stefanski's conviction, the court ended the paragraph with its finding that "[t]hus, the jury considered other evidence that corroborated the victim's testimony, and the contradiction about the timing of the victim's probation violation proceedings was not outcome determinative." *Id.* Stefanski takes issue with this last sentence.

state court opinions with a presumption that they consistently and correctly apply the law, *see Holland*, 542 U.S. at 654–55, the state court's opinion is more properly read as following *Strickland*, with the last sentence inartfully crafted. At the outset, the state court thrice articulated *Strickland*'s prejudice prong—with its reasonable probability requirement—correctly, including once in the very same paragraph in which the state court wrote the offending sentence. *See Stefanski*, 2018 WL 5276411, at *1, 3, 4. And the court's reference to outcome determinativeness appears in the context of responding to Stefanski's claim that the counsel's failure was "fatal to his defense," suggesting that the court's phrasing may have been a response to his argument rather than the application of a stricter prejudice test. *Id.* at *3. In light of the court's repeated correct articulation of the law, we decline to "needlessly create internal inconsistency" by charging the court with applying the incorrect test based on this stray reference. *Holland*, 542 U.S. at 654; *see also Genovese*, 924 F.3d at 937–38, 937 n.2 (finding case with similar error more like *Holland* than *Vasquez*).

*Unreasonable Application.* Stefanski next contends that even if the state court's prejudice determination was not contrary to clearly established federal law, AEDPA is inapplicable because it nonetheless constitutes an unreasonable application of federal law. We disagree.

Stefanski bases this argument on the proposition that the state court credited the government's witnesses over Stefanski's, thus improperly weighing the evidence and usurping the role of the jury. But Stefanski misinterprets the state court's opinion and AEDPA's restrictions on our review. Determining whether a reasonable probability of a different outcome exists requires reviewing courts to take stock of the strengths and weaknesses of the surrounding case. *See Richter*, 562 U.S. at 112–13 (discussing the strength of the other evidence of guilt); *Kayer*, 592 U.S. at 121–22 (applying similar analysis in the context of mitigation). And here, the state

court reasonably concluded that, in light of Lounds's repeated testimony that he faced a pending probation violation at the time of his initial report, as well as testimony by other men corroborating aspects of his story, Stefanski failed to demonstrate a reasonable probability that he would not have been convicted had the probation records been introduced.[3] *Stefanski*, 2018 WL 5276411, at *3. The import of the state court's analysis was not to make a credibility determination favoring the government's witnesses over Stefanski's testimony and witnesses, but to demonstrate that Lounds's alleged motive to fabricate was not the key to the case, as the case turned on not only Lounds's testimony, but the credibility of other witnesses as well.[4] The court could have reasonably found that the case did not turn mainly on the motive theory, as the testimony concerning the sexual nature of Stefanski's parties differed so greatly between the government and defense's witnesses—with the government's witnesses describing Stefanski hosting parties featuring heavy intoxication and overt sexual activities while the defense's witnesses described more casual gatherings along the lines of card games and soda pop or light drinking—the jury simply had to choose to believe one side over the other. Stefanski's disagreement with the state

---

[3] We also note that while Stefanski attributes the change in verdict across the first and second trial to France's different testimony, Stefanski recognizes that two of the government's witnesses who corroborated aspects of Lounds's accounts of sexually-charged parties had not testified in the first trial. The addition of these two witnesses to corroborate Lounds's account and refute Stefanski's narrative of events undoubtedly strengthened the government's case.

[4] Further, *Ramonez v. Berghuis*, 490 F.3d 482 (6th Cir. 2007), a case cited by Stefanski, speaks largely to a different issue than presented here. The court in *Ramonez* rejected the notion that the state court's credibility determinations were entitled to deference under § 2254(e)(1)—a portion of AEDPA not implicated in the case before us. *See* 490 F.3d at 491 (finding determinations within the prejudice prong to be a mixed issue of law and fact and thus not subject to § 2254(e)(1)'s presumption). Although it also deemed the state court's determination that the defendant was not prejudiced unreasonable, it did so under circumstances different than here: the defense counsel failed to conduct a reasonable investigation to learn that witnesses could have disputed a key element of the prosecution's case on which the jury had indicated it was deadlocked. *Id.* at 489.

court's conclusion falls far short of establishing that no fairminded jurist could agree that he failed to establish prejudice. *See Richter*, 562 U.S. at 102.

As the Supreme Court has noted, a reasonable probability requires more than a "'conceivable[]' likelihood of a different result." *Kayer*, 592 U.S. at 118 (internal citation omitted). It is thus not enough for Stefanski to show that the introduction of Lounds's probation records might have generated a "somewhat stronger defense and the jury conceivably might have reached a different result." *Spaulding*, 704 F. App'x at 483. We have held that where evidence that counsel failed to introduce at trial "would have been simply cumulative to the evidence actually presented to the jury," this failure "does not rise to the level of a constitutional violation." *Getsy v. Mitchell*, 495 F.3d 295, 313 (6th Cir. 2007) (en banc) (quoting *Broom v. Mitchell*, 441 F.3d 392, 410 (6th Cir. 2006)). This circuit has recognized that in cases of sexual assault, which often lack physical evidence, prejudice may be found more readily. *See Vasquez*, 345 F. App'x at 119 (quoting *Hodge v. Hurley*, 426 F.3d 368, 386 (6th Cir. 2005)). But a petitioner alleging prejudice still must point to evidence that "differ[s] in a substantial way—in strength and subject matter—from the evidence actually presented" at trial. *Hill v. Mitchell*, 400 F.3d 308, 319 (6th Cir. 2005); *see Martin v. Haas*, 731 F. App'x 443, 458–59 (6th Cir. 2018) (deeming failure to introduce impeachment evidence of rape victim that would have supported her motive to fabricate charges not prejudicial because it was only "*relatively* more compelling" than the theory of motive presented at trial); *Hartman v. Bagley*, 492 F.3d 347, 361 (6th Cir. 2007) (finding no prejudice where counsel failed to expand on or corroborate information already in the record).

Stefanski's case does not resemble those in which we have found prejudice. *Cf. Lewis v. Wilkinson*, 307 F.3d 413, 422 (6th Cir. 2002) (granting habeas petition in rape case due a Confrontation Clause violation where the state trial court wrongfully excluded statements from

victim's diary indicating that the sexual conduct was consensual, and the victim had other motives for pursuing prosecution). In *Lewis*, the failure to introduce excerpts from the victim's diary strongly suggesting that she fabricated the sexual assault charges was not harmless in part because the excerpts went to a "different type of motive than that implied by the other evidence" introduced. *Id.* And in *Vasquez*, the defense counsel failed to introduce key testimony from multiple witnesses strongly calling into question the child-victim's allegations in a manner not otherwise conveyed to the jury. 345 F. App'x at 119–21. Here, in contrast, the introduction of the probation records would have merely corroborated the information Stefanski's counsel had elicited from Lounds himself—that he faced probation violation proceedings when he first reported the sexual assault. Lounds did not mention the probation proceedings just one time in passing—he noted three times his understanding that he faced an upcoming sentencing when he first reported the sexual assaults to France. Even if, as Stefanski alleges, the jury may have believed, after France's testimony, that Lounds was mistaken, Lounds's testimony at least established that *he believed* he faced an upcoming sentencing for such a violation when he first reported the assaults and thus still supported the motive-to-fabricate theory.

The government's use of France's testimony to suggest that Lounds faced no probation violation proceeding is certainly concerning, but it did not render the state court's determination beyond reasonable debate, nor did it establish prejudice. Based on Lounds's repeated affirmations that he faced a pending sentencing, it appears illogical and unlikely that the jury affirmatively disbelieved Lounds's statements that he faced sentencing for a pending violation at the time of his initial report, but simultaneously believed Lounds's allegations—over testimony by Stefanski and others to the contrary—that Stefanski sexually assaulted Lounds on three occasions. Because the record already contained much of the information the probation record would have confirmed,

fairminded jurists could disagree as to whether the failure to introduce the probation records tipped the scales. Because "prejudice is at best debatable, . . . we are therefore not empowered on federal habeas review to disturb the Michigan Court of Appeals's rejection" of Stefanski's ineffective assistance claim. *Martin*, 731 F. App'x at 459; *see* 28 U.S.C. § 2254(d).

2.

Stefanski also charges ineffective assistance for his counsel's failure to lodge the correct objection to hearsay testimony from Lounds's mother. For the following reasons, we disagree.

A. Performance

The parties first disagree about the import of the state court's discussion of performance, and thus which standard of review applies to this prong.[5] Even assuming that de novo review applies to this prong because it is unclear whether the state court assessed performance on the merits, *see Rayner*, 685 F.3d at 638, we do not find counsel's performance deficient.

Lounds's mother testified that Lounds called her from jail and disclosed that Stefanski "did something [sexual] to him." DE 5-14, Trial Tr. Vol. I, Page ID 921. Defense counsel lodged a timely objection on the basis of hearsay, which the court initially sustained. After the prosecution argued that the statement was admissible as a prior consistent statement, the court reversed course and admitted the testimony. The Michigan Court of Appeals found that because Lounds made the statement after the motive to fabricate arose, the statement was not in fact admissible as a prior

---

[5] In addition to arguing that AEDPA deference applies, the government also argues that this is a matter of state law and thus unreviewable by federal courts. This argument is misguided, as the failure to move to suppress evidence admitted pursuant to state evidentiary law is cognizable as an ineffective assistance of counsel claim. *See, e.g.*, *Hewitt-El v. Burgess*, 53 F.4th 969, 980 (6th Cir. 2022) (finding counsel's impeachment of his own client with his five previous felony convictions, as well as his failure to attempt to exclude such convictions, unreasonable).

consistent statement. *See Stefanski*, 2018 WL 5276411, at *5. Stefanski thus faults his counsel for not following up with a more specific objection to rebut the prosecutor's (incorrect) contention.

Stefanski highlights the fact that his counsel lacked a strategic reason for failing to make a more specific hearsay objection, one the Michigan Court of Appeals found would have been successful. But that Stefanski's counsel admittedly made a mistake in failing to make a meritorious argument for exclusion does not automatically satisfy the first prong of an ineffective assistance of counsel claim. *Strickland*'s definition of deficient performance does not cover any mistake made by an attorney; rather, it covers "errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. *Strickland* warns reviewing courts to avoid applying 20/20 hindsight "to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689. Considering counsel's otherwise correct general hearsay objection to the same testimony, "it is difficult to say that the admission of this one hearsay statement demonstrates constitutionally deficient performance." *United States v. Robison*, 205 F.3d 1342, 2000 WL 191852, at *8 (6th Cir. Feb. 11, 2000) (unpublished table decision); *cf. Meadows v. Doom*, 450 F. App'x 518, 523 (6th Cir. 2011) (applying AEDPA and *Strickland* and finding that, although "trial counsel could undeniably have been more vigilant in objecting" to inadmissible statements, the errors were not so serious as to satisfy *Strickland*'s first prong). *But see Hurley*, 426 F.3d at 376 (finding counsel's "failure to object to *any* of the numerous improper statements" made by the prosecutor outside the range of reasonableness).

Under the circumstances of this case, counsel's single failure to cite the specific applicable evidentiary rule—rather than the more general one—does not fall outside the "wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. This conclusion is supported by our prior determination in *Cathron v. Jones*, 77 F. App'x 835 (6th Cir. 2003), where an attorney

lodged an objection against the introduction of testimony on one ground but failed to object on a stronger evidentiary ground. *Id.* at 843. Although the attorney should have lodged a more specific objection, we did "not find that counsel's failure to object was so unreasonable that he was not functioning as counsel guaranteed by the Sixth Amendment." *Id.* That reasoning is persuasive here, and Stefanski does not cite case law counseling a different outcome. Accordingly, Stefanski fails to establish deficient performance.

## B. Prejudice

Assuming Stefanski could show deficient performance, he nonetheless fails to demonstrate prejudice. At the outset, he is incorrect that the state court unreasonably applied federal law in concluding he failed to prove prejudice. At the very least, reasonable jurists could disagree as to whether the introduction of Lounds's mother's testimony prejudiced Stefanski. *Richter*, 562 U.S. at 101. This renders relief inappropriate.

Stefanski argues that Lounds's mother's testimony was crucial to undercutting Stefanski's theory that Lounds fabricated the assaults to get a lenient sentence on his probation violation because Lounds allegedly disclosed the assaults to his mother *after* he was already sentenced and thus when he no longer had an incentive to report the assaults. In light of this timing, the state court's determination that Lounds's mother's testimony actually bolstered the motive-to-falsify theory appears incorrect—at the point Lounds spoke to his mother, he no longer had the alleged motive to lie. But this incorrect determination is not so unreasonable that it renders AEDPA deference inappropriate. *See Kayer*, 592 U.S. at 118; *Wiggins*, 539 U.S. at 520–21. The state court was correct that Lounds's mother's testimony was vague and did not provide any detail into Lounds's account of the underlying assaults, so it paled in comparison to the detail provided by other testimony and renders it unlikely that the mother's testimony played a prominent role in the

jury's decision. *See Spaulding*, 704 F. App'x at 481 (distinguishing between key testimony and that which, "though helpful, . . . was far from critical to the prosecution's case").

As noted in the previous prejudice analysis, the testimony presented in this case differed wildly. The government produced witnesses with accounts vastly different from the accounts provided by Stefanski and his witnesses. The jury's decision thus came down to which group to believe; such analysis centered on credibility determinations. Although the timing of Lounds's disclosures certainly played a role in the case, it was not the only dispute, and perhaps not even the main dispute. That Lounds's mother's statement helped the prosecution's case does not render it prejudicial—at least, not so prejudicial that it supports "a reasonable probability that," but for the erroneous introduction of the testimony, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In speculating that a jury may reasonably believe that Lounds would not have disclosed the sexual assaults to his mother if they were not true, Stefanski offers just that—speculation. *See Kayer*, 592 U.S. at 118. Stefanski fails to show a "substantial" likelihood of a different result to satisfy *Strickland* and falls far short of establishing that the state court's determination "lies 'beyond any possibility for fairminded disagreement'" to overcome AEDPA. *Id.* (internal citations omitted).

VI.

For the foregoing reasons, we affirm the district court's rejection of Stefanski's petition.